**FILED**
**CLERK**

10/3/2012 1:15 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
DANIEL MILLER, ROHIT GULATI,
SCOTT POWER, RAMEL WILLIAMS,
and all current and former
Federal Inmates confined in the
Nassau County Correctional Center
who are similarly situated,

                Plaintiffs,

        -against-                     ORDER
                                      12-CV-4164(JS)(WDW)

COUNTY OF NASSAU, MICHAEL J.
SPOSATO, Sheriff of Nassau
County, and CHARLES DUNNE,
United States Marshal,
Eastern District of New York,

                Defendants.
----------------------------------X
APPEARANCES:
For Plaintiff:      Daniel Miller, 12003565, Pro Se
                    Rohit Gulati, 11006292, Pro Se
                    Scott Power, 12006351, Pro Se
                    Ramel Williams, 11006066, Pro Se
                    Nassau County Correctional Center
                    100 Carman Ave.
                    East Meadow, NY 11554


For Defendants:     No appearances


SEYBERT, District Judge:
```

Incarcerated pro se plaintiff Daniel Miller ("Miller")[1],

---

[1] Miller is no stranger to this Court.  Between 2000 and his filing of the instant case on August 20, 2012, Plaintiff has filed seventeen (17) in forma pauperis civil actions, almost all of which have been dismissed: Miller v. U.S., No. 00-CV-3088(CBA) (withdrawn); Miller v. Cnty. of Nassau, No. 00-CV-6124(JS)(WDW) (dismissed for failure to state a claim upon which relief may be granted); Crosby v. Walsh, No. 03-CV-4897(ARR) (dismissed in forma pauperis complaint filed by four inmates, including Miller, for failure to state a claim); Miller v. Reilly, No. 05-CV-0611(JS)(WDW) (settled); Miller v. Cnty. of Nassau, 467 F. Supp. 2d 308 (E.D.N.Y. 2006) (dismissed for failure to state a claim upon which relief may be granted); Miller v. Reilly, No. 06-CV-

together with fellow inmates Rohit Gulati ("Gulati"), Scott Power ("Power") and Ramel Williams ("Williams") (collectively, "Plaintiffs") filed a Complaint in this Court on August 20, 2012 pursuant to 42 U.S.C. § 1983 ("Section 1983") against the County of Nassau ("Nassau County"), Nassau County Sheriff Michael Sposato ("Sposato"), and Charles Dunne, United States Marshal, Eastern District of New York ("Dunne") (collectively, "Defendants"), accompanied by applications to proceed in forma pauperis for each Plaintiff.  The Complaint is styled as a class action, the proposed class being comprised of:

> [A]ll inmates confined in the Nassau County
> Correctional Center, East Meadow, New York,
> from in or about July 1, 1999 up until the
> date of the filing of this complaint who are:
> federal pretrial detainees, holdover federal
> prisoners awaiting sentencing, holdover
> federally sentenced prisoners awaiting

---

3727(ADS) (settled); Miller v. Reily, No. 06-CV-6485(JS) (withdrawn); Miller v. Zerillo, No. 07-CV-1687(JS)(WDW) (dismissed as moot and unexhausted under the PLRA); Miller v. Zerillo, No. 07-CV-1719(JS) (dismissed as moot and unexhausted under the PLRA); Miller v. Lindsay, NO. 07-CV-2556 (JS) (dismissed as moot); Miller v. Alexander, No. 07-CV-3533(JS) (dismissed as moot); Miller v. Reilly, No. 08-CV-1863(TCP) (dismissed as unexhausted and moot); In re Daniel Miller, No. 12-MC-0512(JBW) (case closed by Order dated August 6, 2012 and Plaintiff's submission concerning "Terrorist Acts" was forwarded to the U.S. Marshal); Miller v. Spizatto, No. 12-CV-2511(JS) (dismissed unexhausted § 2241 petition claiming excessive bail); Miller v. Cnty. of Nassau, No. 12-CV-4164(JS)(WDW); Miller v. Smith, No. 12-CV-4378(JS)(WDW);  Miller v. Cnty. of Nassau, No. 12-CV-4466(JS)(WDW).  Moreover, since the filing of the instant action, Plaintiff has filed three (3) more in forma pauperis complaints: Miller v. Cnty. of Nassau, No. 12-CV-4430(JS)(WDW); Miller v. Cnty. of Nassau, No. 12-CV-4549(JS)(WDW) and Miller v. Cnty. of Nassau, No. 12-CV-4550(JS)(WDW).

designation by the Bureau of Prisons, of
federal parole probation or supervised release
violators awaiting final disposition.

(Compl. at 1.)   In addition, Plaintiffs filed an Order to Show

Cause seeking a temporary restraining order and a preliminary

injunction:

> 1.   enjoining, prohibiting and restraining
> the enforcement of the contract entered
> into and between the County of Nassau and
> the U.S. Marshals Service to house
> federal prisoners in the Nassau County
> Correctional Center in East Meadow, New
> York while this action remains pending;
>
> 2.   enjoining the U.S. Marshals Service to
> move all federal prisoners from the
> Nassau County Correctional Facility to
> either MDC or Queens during the pendency
> of this action;
>
> 3.   certifying this action as a Class Action,
> and appointing counsel to represent the
> interests of the class; and
>
> 4.   for such other and further relief as the
> Court may deem just and proper.

(See Order to Show Cause, filed August 20, 2012.)

Because Miller has had "three strikes" pursuant to 28

U.S.C. § 1915(g), and has not alleged that he is "under imminent

danger of serious physical injury," his application to proceed in

forma pauperis is denied.  **Miller is directed to pay his pro rata**

**share of the $350.00 filing fee within fourteen (14) days of the**

**date of this Order, and a failure to do so will lead to the**

**dismissal of his claims without further notice and judgment shall**

3

**enter.** Miller is advised that his payment of the filing fee does not exempt him from the requirements of 28 U.S.C. § 1915A and the Court is required to dismiss a complaint if the action is frivolous or malicious; fails to state a claim upon which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(i-iii); 28 U.S.C. § 1915A(a) & (b).

In addition, because Plaintiffs are proceeding pro se they cannot represent anyone other than themselves.  See, e.g., Moore v. T-Mobile USA, No. 10-CV-0527, 2011 WL 609818, *6 (E.D.N.Y. Feb. 15, 2011) ("[Plaintiff] cannot convert this action to a class action because he is proceeding pro se, and a pro se litigant cannot represent anyone other than himself or herself." (citing Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir. 1990))).  Accordingly, the request for class certification is denied.

The applications to proceed in forma pauperis filed by Gulati, Power and William are granted; but, for the reasons that follow their claims are sua sponte dismissed, in part, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  Leave to file an Amended Complaint is accordance with this Order is granted.

Finally, the requests for a temporary restraining order and/or a preliminary injunction are denied.

4

DISCUSSION

I.    The Complaint

        The thirty (30) page handwritten Complaint, brought
pursuant to 42 U.S.C. § 1983 ("Section 1983) and Bivens v. Six
Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388,
91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), seeks to challenge a
contract originally entered in 1999 and "repeatedly renewed"
between the County of Nassau and the United States Marshal Service
to "house federal prisoners at the Nassau County Correctional
Center." (Compl. at 7.)  Each of the Plaintiffs claims to be a
federal prisoner or federal pre-trial detainee who is being housed
at the Nassau County Correctional Center.  The gravamen of the
Complaint is that the conditions at the Nassau County Correctional
Center are deplorable and, therefore, the "contract entered into by
and between the County of Nassau and the United States Marshals
Service [is] illegal and unenforceable and violative of the civil
rights of federal prisoners, nunc pro tunc to July 1999."

        Plaintiffs also complain generally about the conditions
at the Nassau County Correctional Center.  More specifically,
Plaintiffs allege, inter alia, that: (1) the cleaning supplies
provided to inmates at the jail are insufficient; (2) there are
roaches and rodents and no schedule for "pest control"; (3)
inadequate personal hygiene supplies are provided to inmates; (4)
access to the law library is not sufficient and the materials

5

available in the library are inadequate; (5) commissary funds are misappropriated and the food sold at the commissary is unhealthy and high in fat, sugar and calories; (6) preferential treatment is given to inmates who are Catholic, Jewish, Protestant or Muslim but other religions such as "Rastafarianism, Santeria [sic] and Native Americans" are not recognized and that the only religious meals provided are for those inmates who follow a Kosher diet; (7) food portions are small and there is no dietician or nutritionist on staff; (8) the medical staff allows correctional staff access to confidential medical files and often discuss inmates' medical issues in violation of HIPPA and other Federal and State confidentiality laws; (9) medications are denied to inmates, such as psychoactive medications, and are limited to only those available as generic or a formulary equivalent to a name brand drug, and (10) jail staff members often use "falsified disciplinary actions and arbitrary lock-ins as a form of abuse." (Compl. ¶¶ 9-69.)

Further, Plaintiffs allege that, in 1998, an inmate named "Nicholas Pizzutto was murdered by officers of the facility." (Compl. at 5.) Plaintiffs describe that the death of Pizzutto prompted an investigation that was well-documented in the media and, as a result, a consent decree was entered between Nassau County and the U.S. Justice Department under which the conditions were to be rectified. Notwithstanding the consent decree,

Plaintiffs claim that "inmates are subjected to daily verbal and often physical assaults by staff members." (Compl. at 19.) There are no additional facts alleged to support this assertion. (Id.)

Plaintiffs seek a preliminary and permanent injunction: (1) requiring Dunne to move each named Plaintiff to the Metropolitan Detention Center ("MDC") in Brooklyn and to move all incarcerated class members to either MDC or Queens; (2) enjoining enforcement of the contract between Nassau County and the U.S. Marshal Service; (3) requiring Nassau County to refund any and all sums received from the United States for the housing of Federal inmates retroactively from July 1999 to the date of the filing of this Complaint; and (4) requiring such sums to be placed into a special fund to be administered by the U.S. Probation Department, Eastern District New York, and allocated to be used for the sole purpose of providing newly released federal prisoners with assistance with respect to housing, education, job training, child care, small business grants, etc. (Compl. at 26.) Plaintiffs also seek an unspecified sum for punitive, compensatory, exemplary, and nominal damages. (Compl. at 27-28.)

II. <u>In Forma Pauperis Applications</u>

The Court has reviewed the applications to proceed <u>in forma pauperis</u> of Gulati, Power and Williams and finds that their financial status qualifies them to commence this action without prepayment of the Court's filing fees. Accordingly, the

applications by Gulati, Power and Williams to proceed <u>in forma pauperis</u> are granted.

Miller, however, has had "three strikes" and is thus barred from filing this action <u>in forma pauperis</u>. 28 U.S.C. § 1915(g) bars prisoners from proceeding <u>in forma pauperis</u> after three or more previous claims have been dismissed as frivolous, malicious or for failure to state a claim upon which relief may be granted. Section 1915(g), often referred to as the "three strikes" rule, provides:

> In no event shall a prisoner bring a civil action . . . under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious injury.

28 U.S.C. § 1915(g).

Here, Miller has at least five disqualifying actions.[2]

---

[2] Consistent with the Second Circuit's instruction, the Court has relied on the docket reports for the cases that pre-date electronic case filing ("ECF") to conclude that each of the prior dismissals are "strikes" in accordance with § 1915(g)'s criteria. <u>See</u> <u>Harris v. City of N.Y.</u>, 607 F.3d 18, 23-24 (2d Cir. 2010) ("Nothing in the PLRA or the caselaw of this or other courts, however, suggests that courts have an affirmative obligation to examine actual orders of dismissal." (citing <u>Thompson v. Drug Enforcement Admin.</u>, 492 F.3d 428 (D.C. Cir. 2007) (accepting docket reports indicating that prior dismissals satisfied at least one of the § 1915(g) criteria for a strike); <u>Andrews v. King</u>, 398 F.3d 1113, 1120 (9th Cir. 2005) ("[D]istrict court docket records may be sufficient to show that a prior dismissal

See Miller v. Cnty. of Nassau, 467 F. Supp. 2d 308 (E.D.N.Y. 2006) (dismissed for failure to state a claim upon which relief may be granted); Miller v. Carpinello, No. 06-CV-12940(LAP), 2007 WL 4207282 (S.D.N.Y. Nov. 20, 2007) (dismissed for failure to state a claim upon which relief may be granted); Crosby v. Walsh, No. 03-CV-4897(ARR) (E.D.N.Y. Feb. 11, 2005) (dismissed for failure to state a claim on which relief may be granted); Miller v. Cnty. of Nassau, No. 00-CV-6124(JS)(WDW) (E.D.N.Y. Nov. 29, 2000) (dismissed for failure to state a claim upon which relief may be granted); Miller v. Menifee, No. 01-CV-8414(MBM) (S.D.N.Y. Sept. 7, 2011) (dismissed as frivolous); Miller v. United States, No. 00-CV-2082(TPG) (S.D.N.Y. Mar. 17, 2000) (dismissed for failure to state a claim upon which relief may be granted).

Moreover, Miller does not allege any facts indicating that he faces "imminent danger of serious physical injury." Chavis v. Chappius, 618 F.3d 162, 167 (2d Cir. 2010). To satisfy the requirement of imminent danger of serious physical injury under 28 U.S.C. § 1915(g), a plaintiff must "reveal a nexus between the imminent danger [he] alleges and the claims [he] asserts." Pettus v. Morgenthau, 554 F.3d 293, 298 (2d Cir. 2009). When a court considers whether such a nexus exists, the court must consider: (1) whether the imminent danger alleged is fairly traceable to the unlawful conduct asserted in the complaint; and (2) whether a

---

. . . counts as a strike")).

favorable judicial outcome would redress the injury.  <u>Id.</u> at 298-99.  The imminent harm must also exist at the time the complaint is filed.  <u>Harris v. City of N.Y.</u>, 607 F.3d 18, 24 (2d Cir. 2010).

Here, Plaintiffs do not allege any facts that the Court can reasonably construe to support a finding that Miller was under imminent danger of serious injury at the time he filed this action. Rather, Plaintiffs complain generally about the conditions at the Nassau County Correctional Center.  More specifically, Plaintiffs allege, <u>inter alia</u>, that: (1) the cleaning supplies provided to inmates at the jail are insufficient; (2) there are roaches and rodents and no schedule for "pest control;" (3) inadequate personal hygiene supplies are provided to inmates; (4) access to the law library is not sufficient and the materials available in the library are inadequate; (5) commissary funds are misappropriated and the food sold at the commissary is unhealthy and high in fat, sugar and calories; (6) preferential treatment is given to inmates who are Catholic, Jewish, Protestant or Muslim but other religions such as "Rastafarianism, Santeria [sic] and Native Americans" are not recognized and that the only religious meals provided are for those inmates who follow a Kosher diet; (7) food portions are small and there is no dietician or nutritionist on staff; (8) the medical staff allows correctional staff access to confidential medical files and often discuss inmates' medical issues in violation of HIPPA and other Federal and State confidentiality laws; (9)

medications are denied to inmates, such as psychoactive medications, and are limited to only those available as generic or a formulary equivalent to a name brand drug; and (10) jail staff members often use "falsified disciplinary actions and arbitrary lock-ins as a form of abuse." (Compl. ¶¶ 9-69.)

As noted above, Plaintiffs also allege that, in 1998, an inmate named "Nicholas Pizzutto was murdered by officers of the facility." (Compl. at 5.) The death of Pizzutto allegedly prompted an investigation that was well-documented in the media and, as a result, a consent decree was entered between Nassau County and the U.S. Justice Department under which the conditions were to be rectified. Notwithstanding the consent decree, Plaintiffs claim that "inmates are subjected to daily verbal and often physical assaults by staff members." (Compl. at 19.) There are no additional facts alleged to support this assertion. (Id.)

Upon careful review of the Complaint, the Court finds no conduct alleged that rises to a level where an imminent danger of serious harm exists to Miller. Rather, Miller complains generally about the conditions of the facility. Wholly absent are any allegations suggesting that, at the time the Complaint was filed, Miller was in imminent danger of serious harm. See, e.g., Malik v. McGinnis, 293 F.3d 559, 562-63 (2d Cir. 2002) ("Because § 1915(g) uses the present tense in setting forth the imminent danger exception, it is clear from the face of the statute that the danger

11

must exist at the time the complaint is filed."); <u>Saia v. Williams</u>, No. 10-CV-624, 2011 WL 3962269, *1 (D. Conn. Mar. 31, 2011) ("[A]llegations of past wrongs do not show an imminent danger existed when this action was brought."). Accordingly, given Miller's long history of vexatious litigation, and in the absence of any claim concerning a danger of imminent serious physical injury, Miller is now barred from filing this case <u>in forma pauperis</u> and his application is thus DENIED. **Miller is directed to pay his <u>pro rata</u> share of the $350.00 filing fee within fourteen (14) days of the date of this Order, and a failure to do so will lead to the dismissal of this action without further notice and judgment shall enter.**

III. <u>Application of 28 U.S.C. § 1915 to the Claims Brought by Gulati, Power and Williams</u>

Section 1915 of Title 28 requires a district court to dismiss an <u>in forma pauperis</u> complaint if the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. <u>See</u> 28 U.S.C. §§ 1915(e)(2)(B)(i-iii); 1915A(b). The Court is required to dismiss the action as soon as it makes such a determination. <u>See</u> <u>id.</u>

Courts are obliged to construe the pleadings of a <u>pro se</u> plaintiff liberally. <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d 185, 191 (2d Cir. 2008); <u>McEachin v. McGuinnis</u>, 357 F.3d 197,

200 (2d Cir. 2004). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. <u>Kiobel v. Royal Dutch Petroleum Co.</u>, 621 F.3d 111, 123 (2d Cir. 2010) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009)). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citations omitted). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555).

IV. <u>Section 1983</u>

> Section 1983 provides that

> > [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must "'allege that (1) the challenged conduct was attributable at

least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.'" Rae v. Cnty. of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting Snider v. Dylaq, 188 F.3d 51, 53 (2d Cir. 1999)). Section 1983 does not create a substantive right; rather, to recover, a plaintiff must establish the deprivation of a separate, federal right. See Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999).

In addition, in order to state a claim for relief under Section 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation. Farid v. Elle, 593 F.3d 233, 249 (2d Cir. 2010). The Supreme Court held in Iqbal that "[b]ecause vicarious liability is inapplicable to . . . [Section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Thus, a plaintiff asserting a Section 1983 claim against a supervisory official in his individual capacity must sufficiently plead that the supervisor was personally involved in the constitutional deprivation. Rivera v. Fischer, 655 F. Supp. 2d 235, 237 (W.D.N.Y. 2009). A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law. See Johnson v. Barney, 360 F. App'x 199 (2d Cir. 2010).

14

In addition, the civil rights claims against Dunne is alleged pursuant <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).  To state a claim under <u>Bivens</u>, a plaintiff must allege facts plausibly showing that a person acting under color of federal law violated rights secured by the Constitution or laws of the United States.  <u>See</u> <u>Flagg Bros. Inc. v. Brooks</u>, 436 U.S. 149, 155–56, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1979).  However, an action under <u>Bivens</u> does not lie against a federal officer in his or her official capacity.  <u>Fed. Deposit Ins. Corp. v. Meyer</u>, 510 U.S. 471, 484–86, 114 S. Ct. 996, 1004–05, 127 L. Ed. 2d 308 (1994); <u>Polanco v. U.S. Drug Enforcement Admin.</u>, 158 F.3d 647, 650 (2d Cir. 1998).

With these standards in mind, the Court considers the claims of Gulati, Power and Williams.  As a threshold matter, apart from page three (3) of the thirty (30) page Complaint, where each named Plaintiff is identified, none of these individuals is again mentioned, nor do any of the allegations in the Complaint refer to Gulati, Power or Williams.  Rather, the Complaint is little more than a diatribe of grievances concerning the general conditions, policies and procedures at the Nassau County jail.

A.   <u>Claims Against Dunne</u>

Insofar as Gulati, Power and Williams seek to assert a <u>Bivens</u> claim against Dunne, such claim is implausible and is

dismissed because a <u>Bivens</u> action does not lie against a federal officer sued in his official capacity. <u>Bensam v. Bharara</u>, No. 12-CV-5409, No. 2012 WL 3860026, *3 (S.D.N.Y. Sept. 5, 2012) (citation omitted); <u>Zandstra v. Cross</u>, No. 10-CV-5143, No. 2012 WL 383854, *3 (S.D.N.Y. Feb. 6, 2012).  Accordingly, Plaintiffs have failed to allege a plausible <u>Bivens</u> claim against Dunne and, accordingly, Plaintiffs' claims against Dunne are dismissed in their entirety.

B.   <u>Claims of Verbal and Physical Abuse</u>

The only allegations concerning verbal and physical abuse at the jail are set forth in paragraph 68 on page 19:  "The inmates confined in this facility, federal and state or local, are constantly subjected to daily verbal and often physical assaults by staff members."  (Compl. ¶ 68.)  Such allegations fail to state a plausible Eighth Amendment claim.[3]  First, it is well-established that "mere verbal abuse, and even vile language, does not give rise to a cognizable claim under 42 U.S.C. § 1983." <u>Petway v. City of</u> <u>N.Y.</u>, No. 02-CV-2715, 2005 WL 2137805, at *3, (E.D.N.Y. Sept. 2,

---

[3] According to the Complaint, Gulati and Williams were pre-trial detainees at the Nassau Correctional Center who are now "holdover" inmates pending sentencing.  Power is alleged to be a pre-trial detainee.  (Compl. ¶¶ 2-4.)  Such distinction is of no moment for purposes of analyzing the alleged Eighth Amendment claims because, whether alleged under the Eighth Amendment or the Fourteenth Amendment, the same standard for deliberate indifference is applied.  <u>See</u>, <u>e.g.</u>, <u>Dilworth v. Goldberg</u>, No. 10-CV-2224, 2012 WL 4017789, at *24 (S.D.N.Y. Sept. 13, 2012) ("As a pretrial detainee, [plaintiff's] claims under the Fourteenth Amendment are analyzed under the same standard as an Eighth Amendment claim for deliberate indifference." (citations omitted)).

2005) (citing <u>Beal v. City of New York</u>, No. 92-CV-0718, 1994 WL 163954, at *6 (S.D.N.Y. Apr. 22, 1994)); <u>see also</u> <u>Justice v. McGovern</u>, No. 11-CV-5076, 2012 WL 2155275, at *3 (E.D.N.Y. June 12, 2012) ("Courts in this Circuit have repeatedly held that '[m]ere threats, verbal harassment or profanity, without any injury or damage, are not actionable under Section 1983.'" (citations omitted)).

Moreover, wholly absent are any allegations concerning whether Gulati, Power and/or Williams suffered any verbal and/or physical abuse.  As these Plaintiffs are proceeding <u>pro se</u>, they may not litigate claims on behalf of anyone other than themselves. <u>Fernicola v. Eannace</u>, 25 F. App'x 68 (2d Cir. 2002) (citation omitted).  Accordingly, **the claims brought by Gulati, Power and Williams concerning general physical abuse at the jail are not plausible as pled and are dismissed without prejudice and with leave to file a plausible Section 1983 claim against a proper defendant concerning any physical abuse that they personally suffered within fourteen (14) days from the date of this Order. Any amended complaint shall clearly be labeled "Amended Complaint" and bear docket number 12-CV-4164(JS)(WDW).  The failure to timely amend the complaint will lead to the dismissal of these claims without prejudice and judgment shall enter without further notice.**

17

C.  <u>Claims Concerning Commissary Pricing and Selection</u>

The Complaint alleges that the prison commissary prices are "excessive" and Plaintiffs complain that the commissary provides "no nutritional food or snack, only a deluge of concentrated sweets."  (Compl. at 21 and ¶ 81.)  It is well-established that "[i]nmates have no constitutional right to purchase items from the prison commissary." <u>Vega v. Rell</u>, No. 09-CV-0737, 2011 WL 2471295, at *25 (D. Conn. June 21, 2011) (citing <u>Mitchell v. City of N.Y.</u>, No. 10-CV-4121, 2011 WL 1899718, at *2 (S.D.N.Y. May 13, 2011) (dismissing claims regarding commissary pricing and selection); <u>Davis v. Shaw</u>, No. 08-CV-0364, 2009 WL 1490609, at *1 (S.D.N.Y. May 20, 2009) (any claims regarding prison commissary do not rise to level of constitutional violation because inmates have no constitutional right to use prison commissary). Accordingly, Plaintiffs' claims regarding commissary pricing and selection are implausible and are thus dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A.

D.  <u>Claims Concerning the Jail Law Library</u>

Plaintiffs allege that their Sixth Amendment rights have been violated because the jail "denies inmates 'meaningful access' to the Courts by both limiting 'physical' access to the prison law library as well as 'constructive' access."  (Compl. ¶ 33.)  More specifically, Plaintiff's complain that physical access to the library is limited to 1 ½ hours per week per housing unit.  Because

18

there is such limited access, Plaintiffs claim that the library is overcrowded.  Plaintiffs describe that fifteen inmates often have to share access to two machines on which to view audio or video discovery and there are only three typewriters.  Plaintiffs further complain that the law library is staffed by two corrections officers "who are not trained as paralegals and are there for security only."  (Compl. ¶ 36.)  And, the two alleged untrained inmate clerks on duty to assist other inmates are alleged to be insufficient in that each inmate gets only about five to seven minutes of their time.  (Compl. ¶ 37.)

Plaintiffs also generally complain that: (1) there are no bilingual clerks available nor are there publications available in languages other than English; (2) the printed materials are out of date and are missing volumes; and (3) inmates are permitted to print only five pages from the West Publishing Law Desk CD-ROM.

The law is clear that "inmates have no 'abstract, freestanding right to a law library or legal assistance.'"  Avent v. New York, 157 F. App'x 375, 377 (2d Cir. 2005) (quoting Lewis v. Casey, 518 U.S. 343, 351, 16 S. Ct. 2174, 135 L. Ed. 2d 606 (1996)).  However, a plausible equal protection and/or due process clause claim may be asserted where an inmate "alleges that the 'shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.'"  Avent, 157 F. App'x at 377 (quoting Lewis, 518 U.S. at 351).  Indeed, a "plaintiff must allege

that the denial of access to the law library proximately caused some prejudice to a legal claim." Boddie v. Carpenter, 159 F.3d 1345 (2d Cir. 1998) (unpublished opinion) (citing Lewis, 518 U.S. at 351); see also Guarneri v. West, No. 11-CV-2333, 2012 WL 3854866, at *2 (2d Cir. Sept. 6, 2012); Palmer v. Superintendent of Monroe Cnty., No. 11-CV-6369P, 2011 WL 5881646, at *2 (W.D.N.Y. Nov. 21, 2011) (dismissing access to the courts claim premised on inadequate law library access because plaintiff failed to allege "an actual injury traceable to the challenged conduct . . . and that actual injury means that a 'nonfrivolous legal claim had been frustrated or was being impeded' due to the actions of prison officials." (citation omitted)).

        As is readily apparent, Plaintiffs fail to allege a plausible constitutional claim concerning the law library.  As a threshold matter, such claims do not arise under the Sixth Amendment, but, rather, are brought pursuant to the equal protection clauses of the Fifth and Fourteenth Amendment and the due process clause of the Fourteenth Amendment.  Bourdon v. Loughren, 386 F.3d 88 (2d Cir. 2004).  Even assuming Plaintiffs' denial of access claims were alleged pursuant to the Fifth and/or Fourteenth Amendment, they fail to state a plausible claim. Plaintiffs' allege only general grievances concerning the alleged inadequacy of the law library and their alleged limited access thereto.  Wholly absent from the Complaint are any factual

allegations suggesting that the alleged denial of access caused some prejudice to a legal claim of Gulati, Power or William.  Thus, **the denial of access claims are dismissed in their entirety unless Gulait, Power and/or William file an Amended Complaint alleging a plausible denial of access claim as set forth herein within fourteen (14) days from the date of this Order.  Any Amended Complaint shall be clearly labeled "Amended Complaint" and shall bear docket number 12-CV-4164(JS)(WDW).  Failure to timely file an Amended Complaint within this time period will lead to the dismissal of these claims without prejudice and judgment will enter.**

E.  <u>Claims Challenging the Enforcement of the Contract Between Nassau County and the United States Marshal Service</u>

Though Plaintiffs seek to challenge a contract allegedly entered between Nassau County and the United States Marshal Service to house federal prisoners at the Nassau County Correctional Center, wholly absent from the Complaint is any legal basis for that challenge.  Given that none of the named Plaintiffs are alleged to be parties to the alleged contract, and affording the <u>pro</u> <u>se</u> Complaint a liberal construction, it appears that Plaintiffs' challenge is premised on the theory that they are third-party beneficiaries to the contract.  Each Plaintiff is alleged to be a federal prisoner or federal pre-trial detainee who is being housed at the Nassau County Correctional Center.

21

Given that Plaintiffs' breach of contract claim arises exclusively under state law together with the fact that the Plaintiffs do not allege that the amount in controversy exceeds $75,000, the Court declines to exercise supplemental jurisdiction over this claim.  Accordingly, Plaintiffs' contract claim is dismissed without prejudice and Plaintiffs may pursue any valid contract claim they may have in this regard in state court.

F.   <u>Religious Discrimination Claims</u>

The Complaint also purports to allege a violation of the First Amendment with regard to the Plaintiffs' right to practice their religions.  However, Gulati, Power and Williams do not allege that they identify with any particular religion, nor do they claim any interference with their personal practice of any particular religion.  It is well-established that a First Amendment Free Exercise of Religion claim requires that a prisoner show that "the disputed conduct substantially burdens his sincerely held religious beliefs." <u>Salahuddin v. Goord</u>, 467 F.3d 263, 274-75 (2d Cir. 2006) (citing <u>Ford v. McGinnis</u>, 352 F.3d 582, 591 (2d Cir. 2003)); <u>see also</u> <u>Colliton v. Gonzalez</u>, No. 07-CV-2125, 2011 WL 1118621 (S.D.N.Y. Mar. 23, 2011) ("A plaintiff seeking to bring a Free Exercise claim bears the initial burden to show that his religious exercise has been burdened by the government's actions or regulations." (citation omitted)).

Here, the Complaint generally alleges that:

> The rights of practicioners [sic] of Rastafarianism, Santeria [sic], and Native American--just to name a few--do not exist at all, violating the establishment clause of the First Amendment. Once a religion is identified by an inmate upon admission, he or she is confined to the practice of that religion, and cannot investigate other beliefs he or she may wish to convert to. Of the religions that the County defendants have defined as "established" or "acceptable" they are limited to: Catholic, Jewish, Protestant or Muslim. Each of the "established religions by the facility has weekly services, however, access to a chaplain is extremely limited and the only recognized religions meal is Kosher. There is no Common Fare Program, such as in the Bureau of Prisons, which satisfies the "Halal" and "Rastafarian" and "Hindu" and other religious dietary restrictions. Members of religions such as Santaria are targets of continuous abuse and mockery by the staff at the facility, including the Catholic chaplain, Father Ralph, and nearly every Caucasian staff member.

(Compl. ¶¶ 24-29.) Although Gulati, Power and Williams claim that "Rastafarianism, Santeria [sic] and Native Americans" are not recognized religions at the Nassau County Correctional Center, none of these inmates allege that he identifies himself with any of those faiths. Moreover, none of these inmates allege that he requested and was denied a meal in accordance with the tenets of his religion. Rather, these allegations are neither particularized to Gulati, Power and/or Williams, nor personal to them. Rather, they appear to constitute general grievances. In the absence of any personal allegations concerning a Constitutional deprivation,

the Complaint does not allege a plausible Free Exercise claim.[4]
Accordingly, **the religious discrimination claims are dismissed
unless Gulati, Power and/or Williams file an Amended Complaint
within fourteen (14) days from the date of this Order alleging a
plausible religious discrimination claim.  Any Amended Complaint
shall be clearly labeled "Amended Complaint" and shall bear docket
number 12-CV-4164(JS)(WDW).  The failure to timely amend the
religious discrimination will lead to their dismissal without
prejudice and judgment shall enter without further notice.**

      G.   <u>Claims Concerning the Adequacy of Healthcare Provided
to Inmates</u>

Like the Free Exercise claims, the allegations concerning
the adequacy of healthcare provided to inmates is generalized and
not particularized to Gulati, Power or Williams.  The Complaint
generally alleges that:

> The Staff of Armor is abusive, permits non-
> medical staff such as correction officers, to
> view confidential medical records of inmates,

---

[4]  Though the Complaint alleges that the religious discrimination
claim arises only under the First Amendment's Free Exercise
clause, the Court has also considered whether a plausible claim
has been alleged under the Religious Land Use and
Institutionalized Person Act of 2000 ("RLUIPA").  "Whether
asserted under the First Amendment or the RLUIPA, 'a religious
liberty claim requires the prisoner to demonstrate that the
disputed conduct substantially burdens his sincerely held
religious beliefs.'"  <u>Ramsey v. Goord</u>, 661 F. Supp. 2d 370, 395
(W.D.N.Y. 2009) (quoting <u>Salahuddin</u>, 467 F.3d at 274-75 (citing
RLUIPA, 42 U.S.C. § 2000cc-1(a); <u>Ford</u>, 352 F.3d at 587 (First
Amendment Free Exercise Clause))).  Accordingly, the Complaint
does not allege a plausible RLUIPA claim either.

> even with respect to psychiatric, psycho-
> logical and HIV/AIDS information, in violation
> of HIPPA and other confidentiality laws.
> Dental care is extremely limited and often
> procedures are performed with no anesthesia,
> general or local. Many inmates suffering from
> psychological and/or psychiatric issues are
> denied psychoactive medications. Medications
> are limited to either generic availability or
> formulary equivalent notwithstanding history,
> medical need, or other considerations.
> Inmates admitted with opiate dependency ate
> not properly detoxified, and several inmates
> ave suffered seizures and other life
> threatening consequences. Regardless of type
> or severity of injury, inmates requiring
> specialist care, MRI, CAT SCAN, orthopedic,
> neurology, cardiology and similar [tests] are
> systemically denied such care.

(Compl. ¶¶ 50-55.) Again, none of the allegations are personal to these individuals and nothing short of general complaints concerning the adequacy of medical care. In the absence of any particularized claims relating to Gulati, Power and Williams, they have not alleged a plausible deliberate indifference claim. Accordingly, **Gulati, Power and Williams are afforded leave to file an Amended Complaint within fourteen (14) days from the date of this Order alleging that they have personally experienced any of the challenged conduct concerning the adequacy of medical care at the Nassau County Correctional Center. Any Amended Complaint shall clearly be labeled "Amended Complaint" and shall bear docket number 12-CV-4164(JS)(WDW). The failure to timely amend the deliberate indifference claims will lead to their dismissal without prejudice and judgment shall enter without further notice.**

H.   Claims Concerning Alleged Falsified Misbehavior Reports

Like many of the allegations in the Complaint, the claims that false misbehavior reports are made against inmates are generalized and not linked to any particular Plaintiff.  Wholly absent are any factual allegations that Gulati, Power or Williams were the subject of any false misbehavior report.  Ordinarily the Court would afford these individuals leave to amend such claims to include such allegations.  However, because it is well-established that inmates do not have a constitutional right to be free from the issuance of false misbehavior reports, amendment would be futile. See, e.g., Williams v. Roberts, No. 11-CV-0029, 2012 WL 760777, *4 (N.D.N.Y Mar. 7, 2012) (dismissing due process claims regarding the issuance of false misbehavior reports because "'a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report.'" (quoting Boddie v. Schnieder, 105 F.3d 857. 862 (2d Cir. 1997)).  Accordingly, insofar as Gulati, Power, and Williams seek to allege a Section 1983 claim arising from the issuance of a false misbehavior report, such claims are dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

CONCLUSION

For the reasons set forth above, Miller's application to proceed in forma pauperis (Docket Entry 2) is denied. **Miller is directed to pay his pro rata share of the $350.00 filing fee within**

**fourteen (14) days of the date of this Order, and a failure to do so will lead to the dismissal of his claims without prejudice and without further notice and judgment shall enter.** Miller is advised that his payment of the filing fee does not exempt him from the requirements of 28 U.S.C. § 1915A.

The applications to proceed <u>in forma pauperis</u> of Gulati, Power, and Williams (Docket Entries 3-5) are granted, but the Complaint is <u>sua sponte</u> dismissed, in part, as set forth above, pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(b). Leave to file an Amended Complaint as set forth above is granted and shall be filed within fourteen (14) days from the date of this Order. Any Amended Complaint shall be clearly labeled "Amended Complaint" and shall bear docket number 12-CV-4164(JS)(WDW).

The remaining claims concerning the living conditions at the Nassau County Correctional Center of Gulati, Power, and Williams against the County of Nassau and Michael Sposato shall proceed and the Clerk of the Court shall forward copies of the summonses, the Complaint, and this Order to the United States Marshal Service for service upon these Defendants forthwith.

Further, Gulati, Power, and Williams' applications for class certification and for a temporary restraining order and preliminary injunction are DENIED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith

27

and therefore in forma pauperis status is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to terminate Charles Dunne as a defendant in this action and to mail copies of this Memorandum and Order to the pro se Plaintiffs.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   October 3, 2012
         Central Islip, New York

28